Filed 4/15/15  Perez v. Navman USA CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BENJAMIN PEREZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NAVMAN USA, INC. et al.,<br><br>    Defendants and Respondents.<br>_____<br><br>BENJAMIN RAMIREZ et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>NAVMAN USA, INC. et al.,<br><br>    Defendants and Respondents. | D066857<br><br><br>(Super. Ct. Nos. RIC1100165,<br>  RIC1100355)<br><br><br><br><br><br>(Super. Ct. No. RIC 1100355) |

APPEAL from a judgment of the Superior Court of Riverside County, Matthew C. Perantoni, Judge.  Affirmed.

McNulty Law Firm, Peter J. McNulty and Brett L. Rosenthal for Plaintiffs and Appellants Benjamin Ramirez and Celia Ramirez.

Law Offices of Ryan & Associates, Timothy J. Ryan; Dewsnup, King & Olsen and David R. Olsen for Plaintiff and Appellant Benjamin Perez.

Thompson & Colgate, Mary L. Frederickson; Hayes, Scott, Bonino, Ellingson & McLay, Mark G. Bonino and Lauren M. Case for Defendants and Respondents.

Benjamin Perez was injured when the car he was riding in struck a tractor-trailer. Benjamin and Celia Ramirez (together Ramirez) were parents of Oscar Ramirez (Oscar), a passenger in the same car as Perez. Oscar was killed in the accident. In separate suits that were eventually consolidated, Perez and Ramirez (together Appellants) sued Navman USA, Inc., Navman Wireless North America, and Absolute Wireless, Inc. (collectively Respondents). Respondents manufactured, supplied, warranted, or were otherwise involved in the production and sale of a certain GPS unit that was used by the driver of the tractor-trailer. Appellants alleged that the GPS unit provided the wrong directions to the driver of the tractor-trailer, which ultimately caused the accident.

Respondents filed a motion for summary judgment, which the superior court granted against all of Appellants' claims. Appellants appeal the ensuing judgment, contending a triable issue of material fact exists as to causation. We agree with the superior court that no such triable issue of material fact exists. Therefore, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Frank Perez (Frank), a professional truck driver employed by KLX Inc., was driving an empty tractor-trailer from Bakersfield to Moreno Valley to pick up cargo. Before leaving Bakersfield, Frank entered the destination address on Globe Street into the truck's GPS unit.

2

Frank was in the middle lane of three northbound lanes on Perris Boulevard as he approached Globe Street. The audio directions from the GPS unit in his rig instructed Frank to turn left onto Globe Street. Frank activated his left turn signal, but noticed on the street sign at the right of the upcoming intersection that the correct turn was to the right, not to the left.

Frank then changed his turn signal to the right and began the move into the right-hand lane on Perris Boulevard. After he made the decision to turn right, Frank no longer consulted the GPS unit. When Perez looked to make sure the right lane was clear before merging, he saw a passenger car (an Acura) come "outta [sic] nowhere, driving fast." Perez saw the Acura swerving from lane to lane at a high rate of speed and was concerned that the car might hit his tractor-trailer no matter what lane he was in.[1]

Frank attempted to avoid the collision by turning his wheel back to the left so as to remain in the middle lane on Perris Boulevard. The car hit the rear end of the trailer on its left rear corner.[2] The impact of the collision took the roof off the car and damaged its right front end.

---

[1] There was no evidence in the record that the tractor-trailer completely moved out of the middle lane.

[2] At oral argument, representations were made that the Acura was traveling 70 to 75 miles per hour at the time of the accident while the tractor-trailer was traveling 25 to 30 miles per hour. However, the record is clear regarding the actual speeds of the two vehicles. According to various California Highway Patrol (CHP) witness interviews, the speed of the Acura ranged from 50 to 75 miles per hour with the CHP's time and distance analysis calculating the Acura's speed at 62 miles per hour. In regard to the tractor-trailer, there is evidence that it was traveling from 5 to 45 miles per hour with the CHP's time and distance analysis calculating the speed at 27 miles per hour.

Perez was severely injured in the accident, and Oscar died from his injuries. The driver of the Acura was arrested for driving while under the influence of alcohol or drugs. (Veh. Code, § 23152, subd. (a).)

Ramirez and Perez filed separate complaints against Respondents. The two actions were consolidated and Perez's complaint was designated the lead case. Both operative complaints included causes of action for products liability. In addition, Perez alleged a claim for negligence and Ramirez brought a wrongful death claim.

Respondents filed a motion for summary judgment, focusing on the lack of a triable issue of material fact as to the issue of causation. Appellants opposed the motion for summary judgment, arguing that an issue of fact existed as to causation based on Frank's deposition testimony; Frank's testimony in a previous, related lawsuit; the declaration of a third party eyewitness (Jonathan Rangel, Jr.); and the declaration of expert witness Dr. Frank Drews.

Respondents filed a reply to the Appellants' opposition. As part of the reply, Respondents objected to some of the evidence submitted by Appellants, including portions of Rangel's and Drews's respective declarations.

After hearing oral argument and considering the pleadings and evidence, the superior court granted the motion for summary judgment. In doing so, the court explained: "The Court finds that Defendants have met their initial burden of producing evidence to show that causation cannot be established. The court finds that Plaintiff[s] ha[ve] not met [their] burden to show that a triable issue of fact exists." Included in the order, the court sustained and overruled certain of Appellants' objections to evidence as

well as Respondents' objections to evidence.  The court did not explain the basis for these rulings.

The court entered judgment based on its order granting summary judgment. Appellants timely appealed.

## DISCUSSION

Appellants claim the superior court committed reversible error in granting Respondents' motion for summary judgment.  They contend a triable issue of material fact exists as to the element of causation, which is essential to the three causes of action at issue.  (See *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 614 [negligence]; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 [strict products liability]; *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263 [elements of cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs].)[3]

### I

### *THE MOTION FOR SUMMARY JUDGMENT*

### A.  Standard of Review

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)  Generally, if all the papers submitted

---

3     Ramirez's wrongful death claim was based on the torts of negligence and strict products liability.

by the parties show there is no triable issue of material fact and the "moving party is entitled to a judgment as a matter of law" (Code Civ. Proc.,[4] § 437c, subd. (c)), the court must grant the motion for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

In performing our independent review, we apply the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (o); *Aguilar*, *supra*, 25 Cal.4th at p. 850.)

If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

6

issue of material fact.  (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 850; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party."  (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Id*. at p. 850, fn. omitted.) Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact."  (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

B.  Respondents Established No Triable Issue of Fact as to Causation

Appellants only challenge the superior court's finding that no triable issue of fact exists as to the element of causation.  Here, Respondents maintain that the evidence was insufficient to establish a "factual causal link" between the defective GPS unit, which provided incorrect directions, and the accident between the Acura and the tractor-trailer. Respondents provided evidence that the GPS unit instructed Frank to turn left, but he determined that he should turn right, believing it safe to do so.  Further, Respondents assert from that moment moving forward, all decisions regarding the operation of the

7

tractor-trailer and the Acura were made by the subject drivers and not influenced or otherwise controlled by the GPS unit.

Respondents maintain the evidence shows before Frank moved to the right, he noticed the Acura approaching from behind, swerving between lanes. The driver of the Acura, who was under the influence of alcohol and drugs, hit the tractor-trailer on the back left corner of the trailer while the tractor-trailer was in the middle lane.

Based on this evidence, we conclude that Respondents, as the moving parties, carried their burden on the motion for summary judgment. Therefore, we move on to examine Appellants' evidence to see if they established a triable issue of material fact. In doing so, we look at three sources of evidence offered by Appellants: Dr. Drews's declaration, Frank's deposition testimony, and the Rangel declaration. However, before we evaluate this evidence, we must consider Respondents' objections to evidence.

### C. Respondents' Objections to Evidence[5]

Although a review of a judgment following the granting of a summary judgment requires an independent review, "[a] different analysis is required for our review of the trial court's . . . rulings on evidentiary objections. Although it is often said that an appellate court reviews a summary judgment motion 'de novo,' the weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard." (*Carnes v. Superior Court* (2005) 126

---

[5] Although Appellants objected to evidence as well, the superior court's rulings on Appellants' objections are not challenged on appeal. As such, we omit any discussion of these objections and only consider evidence submitted by Respondents that the court admitted for purposes of the motion for summary judgment.

Cal.App.4th 688, 694; see *Miranda v. Bomel Construction Co, Inc.* (2010) 187

Cal.App.4th 1326, 1335.)[6]

Here, Respondents made a total of 38 objections to evidence. The court sustained

Respondents' objections to evidence numbers 31 and 33 through 38. It overruled all of

Respondents' other objections.

Appellants challenge the superior court's evidentiary ruling, focusing on objections

to Drews's declaration (objection nos. 33 through 36). First, Appellants claim that the

court provided no basis for the exclusion of portions of Drews's declaration, and as such,

the exclusion was arbitrary. Appellants, however, provide no authority for this

proposition. Our independent research has uncovered none. Moreover, we would not

create a rule requiring such on the record here. For each of the objections at issue,

Respondents presented the evidence objected to as well as the basis of the objection.

Appellants therefore are not left to guess on what grounds the court sustained the

objections. (Cf. *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 255

[concluding the trial court erred in issuing a blanket ruling sustaining all but one of the

defendants' 764 objections to evidence, noting "[s]ome of the sustained objections did not

even assert any basis for the objection!").]

---

6     Our high court, however, has not weighed in on the issue. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 ["we need not decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo"].) However, under either standard, we find no error in the superior court's exclusion of portions of Drews's declaration.

Second, Appellants complain that they were not afforded the opportunity to "be heard on the evidentiary objections." Appellants' argument, however, is not supported by the record. During the hearing on the motion for summary judgment, the court informed counsel that it saw "a real causation problem." Perez's counsel and Ramirez's counsel both emphasized the evidence they believed showed a triable issue of fact as to proximate cause, focusing on Frank's reliance on the GPS unit. In response, Respondents' counsel attacked the admissibility of Drews's declaration, making reference to Respondents' objections to evidence while arguing the evidence did not allow Drews "in any kind of evidentiary way . . . to connect his theory of distracted driving and the accident that happened." In addition, Respondents' counsel also referenced the objections to Rangel's declaration.

The court then allowed both Ramirez's counsel and Perez's counsel to respond, but they did not address Respondents' objections. Thus, the court provided Appellants with a chance to discuss Respondents' objections to evidence at the hearing on the summary judgment motion, but counsel declined to do so.

Finally, Appellants maintain that the superior court improperly ignored Drews's "ultimate opinion" on causation because Respondents did not object to it. This opinion was "[g]iven the evidence summarized herein, it is my professional opinion that the misdirection to turn left given by the [GPS unit] was a substantial contributing factor in causing the subject accident and plaintiffs' resulting injuries." Appellants characterize Drews's opinion as uncontroverted, and contend for purposes of opposing the motion for summary judgment, the court had to rely upon it. We disagree, noting the court sustained

10

objections to the foundational portions of Drews's declaration. In the absence of those segments, Drews's causation opinion lacks the necessary foundation. Further, and more importantly, we determine that the court was correct, under Evidence Code section 801, to implicitly disregard Drews's "ultimate opinion."

### 1. *The Objections to Drews's Declaration*

Drews was an expert witness for Perez who was "retained . . . to investigate and advise on the causative factors involved in the . . . [subject] accident." Drews's declaration was submitted in support of Perez's opposition to the motion to summary judgment. In response to that declaration, Respondents' objected to a portion of paragraph 8 of the declaration, all of paragraphs 9 and 10, and a portion of paragraph 11.

In paragraph 8, Drews declared: "Based upon the foregoing facts and materials and upon my training and experience in the field of human factors and safety in the use of data displays and equipment and in the field of driver distraction, I can render the following professional opinions. Frank Perez relied on the navigation instructions given by the [GPS unit], turned on his left-turn signal, and started to move to the left to make a left-hand turn, whereupon he was distracted by (a) seeing the Acura vehicle approaching from behind, and (b) *at the same time*, he became confused by the contradictory information provided by the [GPS unit] and the street signs." (Italics added.) Respondents objected to Drews's use of the phrase "at the same time" in the last sentence on the grounds that it misstates the evidence and was contrary to an earlier portion of Drews's declaration. The court sustained this objection.

11

In paragraph 9 of his declaration, Drews stated: "A professional truck driver who has relied on the [GPS unit's] directions without incident for approximately 1,000 trips, will have followed literally tens of thousands of turn-by-turn instructions from the system without being misdirected, and can reasonably be expected to come to rely on the device to reliably direct him to his destination. Given the evidence summarized herein and based on my experience in the field of human factors psychology and safety in the use of data displays and equipment and in the field of driver distraction, a driver under such conditions can reasonably be expected to develop a complacency to automation, i.e., the driver relies blindly on the system. This reliance makes a driver ill-prepared to respond to incorrect instructions. Although a system which provides auditory cues as well as visual cues will somewhat relieve a driver from excessive 'heads down' time engrossed in the device, nevertheless, due to the complacency to automation associated with repeated successful use of the system, a driver given misdirections or contradictory instructions will not be able to maintain sufficient situation awareness with regard to surrounding traffic to correctly predict other vehicles [sic] actions and to correctly position his vehicle to avoid a collision." Respondents objected to this entire paragraph on the grounds of lack of foundation and speculation to the extent that the paragraph was attempting to explain Frank's actions in driving the tractor-trailer or how he would act in a particular circumstance. The court sustained this objection.

In paragraph 10 of his declaration, Drews declared: "A driver who encounters the conditions shown by the evidence summarized herein is required to multi-task and respond quickly to solve the navigation problem and make a decision on how to proceed.

12

Given the high level of cognitive processing demanded by this situation, it is to be expected that a driver in these conditions will decide to change directions from the left-turn direction given by the navigational system, turn to the right in response to the street sign directing the driver to the right, and then take avoidance maneuvers in response to the threats he has created from traffic approaching from behind." Respondents objected to this entire paragraph on the grounds of lack of foundation and speculation to the extent that the paragraph was attempting to explain Frank's actions in driving the tractor-trailer or how he would act in a particular circumstance. The court sustained this objection.

In paragraph 11, Drews stated: "Given the evidence summarized herein, it is my professional opinion that the misdirection to turn left given by the [GPS unit] was a substantial contributing factor in causing the subject accident and the plaintiffs' resulting injuries. Just prior to the subject accident, Frank Perez prepared to make a left turn consistent with the auditory and visual navigation cues provided the [GPS unit], which he discovered were incorrect upon seeing the conflicting street signs. The evidence shows that as a direct result of the misdirection supplied by the [GPS unit], [Frank] was confused by the conflicting information from the street signs, and *acted in a reasonably foreseeable manner* in seeking to correct the mistaken directions by moving to the right, whereupon he was confronted with yet another foreseeable hazard, a speeding driver coming upon [Frank's] tractor-trailer rig from behind, whereupon he moved back to the left, resulting in the collision." (Italics added.) Respondents objected to the phrase "acted in a reasonably foreseeable manner" on the grounds of lack of foundation for a legal conclusion. The court sustained the objection.

13

As a threshold matter, we note that Appellants only argue that the superior court abused its discretion in excluding portions of Drews's declaration when it failed to provide: (1) any reasoning in support of its sustaining the objections or (2) Appellants the opportunity to address the objections. As we discuss above, we find no merit in either of these conditions. Moreover, these contentions do not challenge the substance of the objections, but instead, deal with the procedure the superior court used in ruling on the objections. Appellants thus have not articulated any other reason why the superior court's ruling on the objections was incorrect. Thus, they have waived any issue concerning the correctness of these specific evidentiary rulings. (*Villa v. McFerren* (1995) 35 Cal.App.4th 744, 739, fn. 4.) We therefore consider all such evidence to have been properly excluded. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [not the proper function of Court of Appeal to search the record on behalf of appellants or to serve as "backup appellate counsel"].)

## 2. *Drews's Opinion on Causation*

Appellants maintain even if we conclude that the superior court did not abuse its discretion in sustaining the objections to portions of Drews's declaration, enough of Drews's declaration was admitted into evidence to create a triable issue of fact. Appellants insist that the majority of Drews's opinion about causation from paragraph 11 was admitted into evidence and was uncontroverted. Therefore, Appellants assert a triable issue of fact exists. We disagree.

At the outset, we note Appellants do not address the impact of the superior court's exclusion of paragraphs 9 and 10 of Drews's declaration on Drews's opinion contained in

14

paragraph 11. The exclusion of those two paragraphs eviscerated most of the substance of Drews's opinion in paragraph 11, which relied on the conclusions reached in the two excluded paragraphs. For this reason alone, we find no error. However, even if we analyze the substance of Drews's causation opinion without reference to paragraphs 9 and 10, we would conclude that the court did not abuse its discretion in disregarding it.[7]

Evidence Code section 801 provides: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." "Subdivision (b) clearly permits a court to determine whether the matter is of a type on which an expert may reasonably rely." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 (*Sargon*).) "[T]he matter relied on must provide a reasonable basis for the particular opinion offered, and that an expert opinion based on speculation or conjecture is inadmissible." (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564; see *Sargon*, *supra*, at p. 770.)

Evidence Code section 801 is not the only statute that governs a superior court's consideration of expert witness testimony. It must also consider Evidence Code section 802. (*Sargon*, *supra*, 55 Cal.4th at p. 771.) Evidence Code section 802 provides: "A

---

7       We would reach the same result if we independently reviewed Drews's causation opinion.

15

witness testifying in the form of an opinion may state . . . the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion.  The court in its discretion may require that a witness before testifying in the form of an opinion be first examined concerning the matter upon which his opinion is based."  "This section indicates the court may inquire into the expert's reasons for an opinion.  It expressly permits the court to examine experts concerning the matter on which they base their opinion before admitting their testimony.  The reasons for the experts' opinions are part of the matter on which they are based just as is the type of matter.  Evidence Code section 801 governs judicial review of the type of matter; Evidence Code section 802 governs judicial review of the reasons for the opinion."  (*Sargon*, *supra*, at p. 771, italics omitted.)

"Thus, under Evidence Code sections 801, subdivision (b), and 802, the trial court acts as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative.  Other provisions of law, including decisional law, may also provide reasons for excluding expert opinion testimony."  (*Sargon*, *supra*, 55 Cal.4th at pp. 771-772.)

"The trial court's preliminary determination whether the expert opinion is founded on sound logic is not a decision on its persuasiveness.  The court must not weigh an opinion's probative value or substitute its own opinion for the expert's opinion.  Rather, the court must simply determine whether the matter relied on can provide a reasonable

16

basis for the opinion or whether that opinion is based on a leap of logic or conjecture." (*Sargon*, *supra*, 55 Cal.4th at p. 772.)

Against this backdrop, we conclude the trial court did not err in implicitly rejecting Drews's opinion on causation. Drews opines "as a direct result of the misdirection supplied by the [GPS unit], [Frank] was confused by the conflicting information from the street sign, and acted in a reasonably foreseeable manner in seeking to correct the mistaken directions by moving to the right." Drews reached this opinion by asserting, as a general principle, that a driver who frequently has used a navigational device can come to rely on the navigational device and can "reasonably be expected to develop a complacency to automation."

Drews maintained that the complacency results in a driver who, when confronted with incorrect or contradictory instructions, is unable to maintain situational awareness relative to predicting what other vehicles might do or positioning his own vehicle to avoid a collision. Drews further concludes without stating a basis that "it is to be expected that a driver in these conditions will decide to change directions from the left-turn direction given by the navigational system, turn to the right in response to the street sign directing the driver to the right, and then take avoidance maneuvers in response to the threats he has created from traffic approaching from behind."

Drews's opinion is based on layers of speculation. He assumes Frank developed a "complacency to automation." There is no evidence in the record to support his conclusion. Drews presumes that Frank was incapable of maintaining situational awareness. Again, no evidence supports this presumption. To the contrary, it appears

17

that Frank maintained situational awareness by using his indicators, noticing the speeding and swerving Acura approaching from behind, and mostly staying in the number 2 lane. In addition, Drews's opinion appears to rest on the belief that Frank was confused while he was changing lanes. Appellants, however, do not cite to any evidence that established that Frank ever caused his tractor-trailer to change lanes out of the number 2 lane and that he was confused when he did so. Our independent review of the record leads us to determine that the evidence was ambiguous at best. Frank denied that he ever got into the number 1 lane. Frank also testified that he did not recall if he ever moved into the number 3 lane. In addition, Frank testified that he decided not to move lanes, but to stay in the number 2 lane to avoid being hit by the Acura, which he saw swerving back and forth from the number 1 to the number 3 lane.

Drews's opinion is speculative and conclusory. He had no evidence that Frank had grown complacent by his overuse of the GPS device, or that he would blindly rely on the GPS device, or that somehow Frank's complacency or blind reliance led him to be unable to perceive the situation (i.e., he became confused) and react appropriately. Drews's opinion does nothing more than opine that " 'something could be true if certain assumed facts are true,' " and is therefore devoid of foundation. (See *Dee v. PCS Property Management, Inc.* (2009) 174 Cal.App.4th 390, 404.)

In short, in providing his opinion on causation, Drews speculated both as to what a driver like Frank would have done, and to how Frank himself would have reacted to the situation. The opinion offered by Drews is not reasonably based on Frank's deposition

18

testimony or any other evidence in the record.[8]  As such, the superior court was correct to disregard it.  (See *Wise v. DLA Piper LLP* (2013) 220 Cal.App.4th 1180, 1188 ["speculation is not evidence, less still substantial evidence."].)

### D.  Proximate Cause

Even if Drews's opinion is disregarded, Appellants claim the court erred in granting summary judgment because a triable issue of fact exists as to proximate cause. Appellants point us to two other sources of evidence on proximate cause:  Frank's deposition testimony and Rangel's declaration.  We independently reviewed this evidence and conclude that no triable issue of fact exists as to proximate cause.

Proximate cause involves two elements:  (1) cause in fact, and (2) the extent to which public policy considerations limit a defendant's liability for its acts.  (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315-316.)  Cause in fact asks whether the defendant's conduct was the " 'necessary antecedent' " to the injury, without which no injury would have occurred.  (*Maupin v. Widling* (1987) 192 Cal.App.3d 568, 573.)  In other words, the actor's conduct must be a " 'substantial

---

[8]      Drews stated that he read and relied on the Rangel declaration.  In that declaration, Rangel claimed to have seen Frank's tractor-trailer swerving and moving lane to lane: "The tractor-trailer combination swerved from right to left, then back to the right, then back to the left again."  Even accepting Rangel's declaration as true, there still exists a substantial gap in Drews's opinion for explaining Frank's supposed erratic driving.  In other words, even relying on Rangel's declaration, Drews's opinion still speculates as to the cause of Frank changing lanes, and thus, the opinion was properly excluded.  (See *Sargon*, *supra*, 55 Cal.4th at p. 776.)  Moreover, Drews's opinion describes the movement of the tractor-trailer inconsistently with the description of the tractor-trailer's movement in the Rangel declaration.  Thus, it does not appear that Drews relied on Rangel's account of Frank's driving of the tractor-trailer.

factor' " in bringing about the harm. (See *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 427.) A substantial factor, for purposes of causation, is something that is more than " 'a slight, trivial, negligible, or theoretical factor in producing a particular result.' " (*Espinosa v. Little Co. of Mary Hospital* (1995) 31 Cal.App.4th 1304, 1314.) The second element of proximate cause is " ' "concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." ' " (*Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1045.)

"[T]he question of proximate cause . . . becomes one of law where the facts are uncontroverted and only one deduction or inference may reasonably be drawn therefrom." (*Whinery v. Southern Pac. Co.* (1970) 6 Cal.App.3d 126, 128.) " 'A mere possibility of . . . causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.' [Citation.]" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 775-776; italics omitted.)

According to Appellants, Frank's deposition testimony established, based on erroneous directions provided by the GPS unit, Frank "moved over" to turn left, realized he needed to turn right when he saw the street signs, became confused, decided to turn right, began to merge right into the number 3 lane when he noticed the Acura "come from behind his truck at a high rate of speed," and Frank tried to avoid a collision with the Acura by turning the steering wheel to the left. Put differently, Appellants maintain that Frank testified to a series of lane changes initiated by the wrong directions provided by

20

the GPS unit, which caused the Acura to hit the back of the tractor-trailer. However, Frank's testimony does not establish that the GPS unit's wrong directions were a substantial factor in causing the accident. There is no support for Appellants' claim that Frank was confused when he decided to turn right, put on his right indicator, and then prepared to merge into the right lane when he saw the Acura. Frank does admit that he was "somewhat confused" when he saw the street signs conflicted with the directions provided by the GPS unit. Nevertheless, after realizing that he needed to turn right, there is no evidence that Frank remained confused, acted erratically, or otherwise drove dangerously. In fact, the evidence suggests that Frank drove cautiously and carefully when he determined he needed to turn right. He put on his right indicator, checked his mirrors, and was traveling at about 25 to 30 miles per hour. Moreover, he admits that he was not relying on the GPS unit at that time.

In addition, Appellants' position relies on their claim that Frank was moving in and out of lanes. Yet, Frank's testimony on this point is much more ambiguous than Appellants admit. For example, during Frank's deposition, the following exchange took place:

> "Q: Mr. Greenberg confirmed for me that you related the story, which is very similar to what appears to have been related by you to the police officer investigating the case, that immediately prior to the collision you were relying on the [GPS unit] to direct you where to make a left-hand turn; is that correct?
>
> "A: Correct.
>
> "Q: And that in reliance on that device you were following its instructions and had moved over believing that you could make a left-hand turn; is that correct?

21

"A: Correct.

"Q: And then at some point you realized that the device was giving you the wrong information; it was not giving you an accurate position and giving you accurate information in terms of what you could do and you then elected to make a right-hand turn; correct?

A: Correct.

Although Frank agrees that he "moved over" there is no context provided in the portion of the deposition in the record establishing that Frank meant that he changed lanes into the number 1 lane. In the portion of that deposition testimony provided to the court, there is no indication that it was established what lane Frank was in, where and when he moved the tractor-trailer from one lane to another (if at all), or if Frank moved back from the number 1 lane into the number 2 lane if Frank actually moved into the number 1 lane at some point. As such, this deposition testimony requires the court to speculate to find that it establishes Frank was moving lane to lane because of the improper directions provided by the GPS unit. Thus, without more, Frank's agreement that he "moved over" does not establish or even call into question whether he moved into the number 1 lane or moved back to the number 2 lane and ultimately caused the accident based on the GPS unit's wrong directions. The deposition does not contain the necessary foundation to establish what was meant by the term "moved over" or what occurred following this apparent move. Also, during his deposition, Frank denied that he ever changed lanes into the number 1 lane. Indeed, the question of whether Frank moved the tractor-trailer into the number 1 lane was asked multiple times during the deposition and Frank answered consistently each time that he did not move the tractor-trailer into the number 1 lane.

22

The same is true regarding Frank moving into the number 3 lane. At best, the testimony suggests that Frank was beginning to merge into the number 3 lane, when he saw the Acura swerving from lane to lane, traveling at great speed, coming up behind the tractor-trailer.[9] At that point, Frank elected to stay in the number 2 lane and the Acura hit the back left portion of the trailer.

The evidence in the record shows that Frank believed he was supposed to turn left because of the directions provided by the GPS unit. He was traveling in the number 2 lane. He turned on his left indicator and prepared to move to the left into the number 1 lane. However, he surmised from the street signs that he really needed to turn right. So he did not move into the number 1 lane, but instead, put on his right indicator and prepared to merge into the number 3 lane on the right. At that time, he saw the Acura come from behind at a great rate of speed and swerving from lane to lane. To avoid a potential collision, Frank turned the steering wheel left to stay in the number 2 lane and the Acura collided with the back left corner of the trailer. Although the GPS unit's directions caused Frank to believe he needed to turn left, and, in reliance on the directions provided by the GPS unit, put on the left indicator, it would be pure conjecture to conclude the wrong directions were a causal factor in the accident that followed after Frank decided to turn right and put on his right indicator. This is especially true here where the evidence shows the Acura was speeding from behind the tractor-trailer,

---

[9]     Frank provided conflicting testimony about when he first sees the Acura. He originally testified that he saw the Acura as he was preparing to turn left. Later in his deposition, after having his recollection refreshed, Frank agreed that he did not see the Acura until he was preparing to turn right.

23

swerving from lane to lane, with an intoxicated driver behind the wheel. Moreover, there is nothing in Frank's testimony that would allow the trier of fact to determine that he was confused, unaware of his situation, or otherwise hindered in his driving ability by the wrong directions provided by the GPS unit. To the contrary, the evidence shows that he acted reasonably, safely, and carefully, by putting on his right indicator and checking his mirrors before merging. When he saw the Acura speeding up from behind, changing lanes, he decided to stay in his current lane. The Acura then hit the left back corner of the trailer. Based on this evidence, the wrong directions provided by the GPS unit are nothing more than a slight, trivial, or negligible factor in producing the accident. (See *Espinosa v. Little Co. of Mary Hospital*, *supra*, 31 Cal.App.4th at p. 1314.)

In addition, Rangel's declaration does not support Appellants' position here. Rangel stated that he observed the tractor-trailer swerving from lane to lane and move in front of the Acura, causing the Acura to hit it. Nevertheless, Rangel's declaration does not establish why the tractor-trailer was swerving. In other words, it does not establish that the wrong directions provided by the GPS unit caused Frank to swerve both left and right and ultimately in front of the Acura. As such, Rangel's declaration, even when considered with Frank's deposition testimony, does not create a triable issue of fact as to whether the GPS unit's wrong directions were a substantial factor of the accident.

Because we conclude this is the rare case where only one inference may be drawn from the undisputed facts (see *Whinery v. Southern Pac. Co.*, *supra*, 6 Cal.App.3d at p. 128), we do not evaluate the public policy element of proximate cause. That said, we struggle to contemplate any public policy that would support finding liability as to

24

Respondents on the facts in the record before us. The wrong directions provided by the GPS unit were simply too remote to be anything more than a trivial factor in the unfortunate accident.

We find no error.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on this appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


McINTYRE, J.

25